**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LINDEN CENTER LLC, | Case No. 23-41820 (ESS) |
| Debtor. | |

**THIRD MODIFIED CHAPTER 11 PLAN OF LINDEN CENTER LLC**

Dated: April 26, 2024

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
Eva M. Thomas, Esq. (*admitted pro hac vice*)
535 Fifth Avenue, 4th Floor
New York, New York 10017
Tel. (973) 287-5006
Fax  (973) 226-4104

*Counsel to the Debtor and*
*Debtor-in-Possession*

Linden Center LLC, the Debtor herein proposes the following third modified chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Section 1.A.

## SECTION 1.    DEFINITIONS AND INTERPRETATION

### A.    Definitions

1.1    ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Case pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); and (b) Fee Claims.

1.2    ***Administrative Expense Claims Bar Date*** means the first Business Day that is 30 days following the Effective Date, except as otherwise specifically set forth in the Plan.

1.3    ***Administrative Expense Claims Objection Bar Date*** means the first Business Day that is 90 days following the Effective Date, except as otherwise specifically set forth in the Plan; provided that the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidated Debtor (Plan Administrator) after notice and a hearing.

1.4    ***Allowed*** means, (i) with reference to any Claim (a) any Claim against the Debtor that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Section [7.9] hereof or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective holder, or (c) any Claim expressly allowed by a Final Order.

1.5    ***Avoidance Action*** means any action commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

1.6    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U. S. C. §§ 101, et seq., as amended from time to time, as applicable to the Chapter 11 Case.

1.7    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

1.8 **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

1.9 **Bar Date Order** means that certain order setting November 1, 2023 as the last date for creditors, including governmental units, to file claims against the Debtor's estate – which order has not yet been entered on the Bankruptcy Court's docket.

1.10 **Business Day** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.11 **Cash** means legal tender of the United States of America.

1.12 **Causes of Action** means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.13 **Chapter 11 Case** means the above-captioned case under chapter 11 of the Bankruptcy Code commenced by the Debtor on May 23, 2023.

1.14 **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.15 **Claims Objection Bar Date** means the first Business Day that is 90 after the Effective Date; provided that the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidated Debtor (Plan Administrator).

1.16 **Class** means any group of Claims or Interests classified pursuant to Section 3.1 of the Plan.

1.17 **Closing** shall mean the date that the Sale Transaction is consummated.

1.18 **Commencement Date** means May 23, 2023.

1.19 **Confirmation** means the entry on the docket of the Chapter 11 Case of the Confirmation Order.

1.20 **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.21    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.22    ***Confirmation Order*** means an order of the Bankruptcy Court in form and substance reasonably acceptable to the Debtor confirming the Plan.

1.23    ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.24    ***Cure Obligation*** means all (a) amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults; and (b) other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

1.25    ***Debtor*** means Linden Center LLC.

1.26    ***Disbursing Agent*** shall mean the Plan Administrator.

1.27    ***Disclosure Statement*** means the Disclosure Statement for the Plan which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

1.28    ***Disputed Claim*** means with respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Interest has been filed, to the extent the Debtor or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

1.29    ***Distribution Date*** means a date or dates, including the Initial Distribution Date, as determined by the Plan Administrator in accordance with the terms of the Plan, on which the Plan Administrator makes a distribution to holders of Allowed Claims.

1.30    ***Distribution Record Date*** means the Effective Date of the Plan.

1.31    ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.32    ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.33    ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.34    ***Estimated Professional Fee Escrow*** means the escrow account established under the Plan five (5) days prior to the Effective Date holding sufficient Cash to pay the Fee Claims in

full, subject to their Allowance by the Bankruptcy Court upon the later of (i) the Effective Date of (ii) the date upon which the order relating to any such Allowed Fee Claim is entered or (iii) upon such other terms and conditions as may be agreed to between the holder of such an Allowed Fee Claim and the Debtor or the Liquidated Debtor (Plan Administrator) as applicable.

1.35    **Exculpated Parties** means, collectively, the Debtor and its successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees, in each case in their capacity as such.

1.36    **Executory Contract** means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.37    **Existing Equity Interests** means all Interests in the Debtor, including membership interests or the rights to acquire any such Interests.

1.38    **Fee Claim** means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtor pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Case.

1.39    **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.40    **General Unsecured Claim** means any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

1.41    **Governmental Unit** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.42    **Guo** or **Mr. Guo** means Yong Chun Guo.

1.43    **Impaired** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.44    **Initial Distribution** means the first distribution that the Disbursing Agent makes to holders of Allowed Claims.

1.45    **Initial Distribution Date** means the date selected by the Plan Administrator, as applicable, on or as soon as reasonably practicable after the Effective Date.

1.46    **Interests** means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all instruments evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in the Debtor that existed immediately before the Effective Date.

1.47    **Lams** shall mean Ching Lam *a/k/a* Henry Lam; Choy Ling Lam *a/k/a* Rita Lam.

1.48    **Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.49    **Liquidated Debtor** means the Debtor from and after the date of the entry of the Confirmation Order.

1.50    **Mortgage Lender** means Sioni Capital LLC and its successors and assigns.

1.51    **Other Priority Claim** means any Claim against the Debtor entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.52    **Person** means an individual, corporation, partnership, joint venture, association, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.53    **Plan** means this chapter 11 plan, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with Section 13.3 herein.

1.54    **Plan Administrator** means the party appointed to effectuate the terms of the Plan post-confirmation.

1.55    **Plan Fund** means all Cash of the Debtor realized from the sale or other disposition (including the Sale Transaction) of its assets, the interest earned on its invested funds, recoveries from Causes of Action or from any other source or otherwise available to the Debtor on the Effective Date, which will be utilized to fund the payment of Allowed Claims and Allowed Administrative Claims, Priority Tax Claims and Fee Claims (including the Estimated Professional Fee Escrow, if any) in their order of priority as provided for in this Plan and to fund Disputed Claim Reserves with respect to such claims.

1.56    **Prince** shall mean Prince USA Group LLC, the 80% owner of the Debtor's equity.

1.57    **Priority Tax Claim** means any unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.58     ***Pro Rata*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class.

1.59     ***Proof of Claim*** means a proof of Claim filed against the Debtor in its Chapter 11 Case.

1.60     ***Property or Premises*** means the real property and improvements thereon located at 33-37 Farrington Street (a/k/a 34-20 Linden Place), Flushing, New York, 11354 (Block 4950 and Lot 18).

1.61     ***Purchaser*** means Inta-Global Trade LLC.

1.62     ***Sale Order*** means the order approving the Sale Transaction [Docket No. 129].

1.63     ***Sale Proceeds*** means the proceeds from the Sale Transaction net of closing costs including, but not limited to, the Debtor's brokerage fees, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title to the Property.

1.64     ***Sale Transaction*** means the sale of the Property to the Purchaser.

1.65     ***SBA*** means the United States Small Business Association.

1.66     ***SBA Claim*** means the claim of the United States Small Business Association.

1.67     ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.68     ***Secured Claim*** means a Claim to the extent (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and the Debtor or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.69     ***Sioni*** means Sioni Capital LLC.

1.70     ***Unexpired Lease*** means a lease between the Debtor and a counterparty that has not expired or been terminated.

1.71     ***Unimpaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

B.     **Interpretation; Application of Definitions and Rules of Construction**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to

time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    **Controlling Document**

The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

**SECTION 2.        ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS**

2.1    *Administrative Expense Claims*.

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor or Plan Administrator, as applicable, agree to different treatment, the Debtor (or the Plan Administrator as the case may be) shall pay to each holder of an Allowed Administrative Expense Claim (other than Fee Claims), Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid from the Plan Fund by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims must be filed and served on the Debtor no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in a separate order of the Court approving such bar date.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor or its property, and Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Debtor or the Plan Administrator, as applicable, must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

2.2     *Fee Claims*.

All entities seeking an award by the Bankruptcy Court of Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date. No later than ten (10) days prior to the Effective Date, all entities holding claims for Fee Claims shall serve upon the Debtor (or Plan Administrator) a notice of the estimated amount of their unpaid Fee Claim and Debtor shall segregate, at Closing of the Sale Transaction, into an Estimated Professional Fee Escrow, the amounts which are necessary to pay the amount of such Fee Claim, in full subject to Allowance by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor or Plan Administrator, as applicable.  The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3     *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course.

**SECTION 3.          CLASSIFICATION OF CLAIMS AND INTERESTS**

3.1     *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2    ***Summary of Classification***.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the classes of Claims and Interests set forth in this Section 3. All potential Classes for the Debtor are set forth herein. The Debtor may not have holders of Claims or Interests in a Class or Classes, and such Classes shall be treated as set forth in Section 3.4.

| Class | Designation | Treatment | Entitled to Vote | Estimated Amount |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | $0.00 |
| 2 | SBA Claim | Impaired | Yes | $0.00 – $500,000 |
| 3 | General Unsecured Claims | Impaired | Yes | $6,000,000 – $24,831,128 |
| 4 | Existing Equity Interests | Impaired | No (deemed to reject) | |

3.3    ***Special Provision Governing Unimpaired Claims***.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor or the Liquidated Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.4    ***Elimination of Vacant Classes***.

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.5     ***Voting Classes.; Presumed Acceptance by Non-Voting Classes***.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

3.6     ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code***.

The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan, in accordance with Section 13.3 hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

3.7     ***Penalties and Interest***.

Absent further order of the Court entered prior to the Effective Date, Allowed Claims shall exclude any amounts based on penalties and no distributions under the Plan shall be made on account of such excluded amounts.  Allowed Claims shall not be entitled to post-petition interest on account of such Claims.


**SECTION 4.          TREATMENT OF CLAIMS AND INTERESTS**

4.1     Class 1  – Other Priority Claims.

Class 1 is Unimpaired, and the holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

Except to the extent that a holder of an Allowed Other Priority Claim against the Debtor may agree to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund in an amount equal to such Claim, payable on the later of the Effective Date, the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter.

4.2     Class 2  – SBA Claim

The Class 2 Claim is impaired.  As such, the SBA is entitled to vote to accept or reject the Plan.

The SBA Claim, to the extent Allowed, will receive its *pro rata* share of any proceeds available after full payment of Administrative Claims, Fee Claims, Priority Tax Claims, and Class

1 Claims.  To the extent Allowed, the SBA Claim is a general unsecured claim subject to *pari passu* treatment with the holders of Allowed Class 3 General Unsecured Claims.

       4.3      General Unsecured Claims.

       Class 3 Claims are impaired.  As such, holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

       Holders of Allowed General Unsecured Claims will receive their *pro rata* share of any Plan Funds available after full payment of Administrative Claims, Fee Claims, Priority Tax Claims, Class 1, and administrative costs.

       4.4      Class 4 – Existing Equity Interests.

       All  Allowed Existing Equity Interests shall be cancelled and Holders of such Interest will receive any remaining funds from the Debtor after all senior classes of are paid in full.  Class 4 Interests are impaired and deemed to reject the Plan.

**SECTION 5.**      **MEANS FOR IMPLEMENTATION**

       5.1      The Plan Fund.

       The Plan Fund will be substantially funded by the net proceeds from the sale of the Debtor's Property which closed on February 29, 2024. As noted above, there is currently $1,322,000 being held by the Debtor.  Additionally, as noted above, the Debtor is pursuing claims against the tenants. The Debtor believes those claims to be worth approximately $1.156 million, before late charges and additional rent.

       5.2      Plan Administrator.

       (a)      <u>Appointment</u>. On the Effective Date, a Plan Administrator shall be appointed for the Debtor pursuant to the Plan Administrator Agreement attached to the Disclosure Statement as Exhibit C.[1]

       (b)      <u>Bonding Requirement</u>.  The Plan Administrator shall not be required to post a bond in order to serve as the Plan Administrator.

       (c)      <u>Authority</u>. The Plan Administrator shall have the authority and right on behalf of the Debtor, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Confirmed Plan, including, without limitation, to:

---

[1] Seven days prior to the Confirmation Hearing, the Debtor shall either include the name of the proposed Plan Administrator in a plan supplement or file a notice with the Court naming the proposed Plan Administrator.

- except to the extent Claims have been previously Allowed, to control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtor;

- make Distributions to holders of Allowed Claims in accordance with the Plan;

- prosecute all Causes of Action on behalf of the Liquidated Debtor, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Liquidated Debtor;

- make regular monthly payments to existing professionals who will continue to perform in their current capacities subsequent to the Effective Date;

- retain professionals to assist in performing its duties under the Plan;

- incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

- administer the Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of the Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of the Debtor ending after the Commencement Date through the liquidation of the Liquidated Debtor as determined under applicable tax laws and (iii) representing the interest and account of the Liquidated Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidated Debtor that are required hereunder, by any Governmental Unit or applicable law; pay statutory fees; and perform other duties and functions that are consistent with the implementation of the Plan.

5.3     Withholding and Reporting Obligations.

(a)     <u>Withholding Rights</u>. In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)     <u>Forms</u>. Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Plan Administrator an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the Internal Revenue Code and so notifies the Plan Administrator. If such request is made by the Plan Administrator and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

5.4     Effectuating Documents; Further Transactions.  On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

5.5     Preservation of Rights of Action.  Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtor reserves any and all Causes of Action (including, but not limited to, (i) those set forth in the following action: *Linden Center LLC v. Bao Kang Adult Day Care Center, Inc., et al.*, Index No. 721031/2019 (NYS Supreme, Queens County); (ii) actions against the Debtor's principals (the Lams) or others or equity holders; and (iii) ) those set forth in the following action: *Linden Center LLC v. Lam, et al.*, Adv. P. No. 23-01050-ess).  On and after the Effective Date, the Plan Administrator may pursue such Causes of Action in its sole discretion. No Entity may rely on the absence of a specific reference to any Cause of Action in the Plan, the Plan Supplement, or the Disclosure Statement as any indication that the Debtor or the Plan Administrator will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Plan Administrator, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order,

or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the release or settlement of any Claims and Causes of Action which are expressly to be released or settled by Confirmation of the Plan itself shall be resolved only upon Confirmation of the Plan and the occurrence of the Effective Date.

5.6     Closing of the Chapter 11 Case.  After the Chapter 11 Case of the Debtor has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**SECTION 6.          Reserved**

**SECTION 7.          DISTRIBUTIONS**

7.1     Distribution Record Date.

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtor shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Plan Administrator, as applicable, shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

7.2     Disbursing  Agent and Date of Distributions.

The Plan Administrator shall be the Disbursing Agent, and other than the payments to be made at the Closing, shall make distributions under the Plan.  Except as otherwise provided herein, the Plan Administrator shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and thereafter, the Plan Administrator shall from time to time determine the subsequent Distribution Dates, if any. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The Plan Administrator shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Plan Administrator make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

7.3     Delivery of Distributions.

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Plan Administrator has determined the then current address of such holder, at which time such distribution shall be made to such holder without Interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Plan Administrator automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan, and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred. The Plan Administrator shall have no obligation to locate the current address for a returned distribution.

7.4     Payment of Disputed Claims.

As Disputed Claims are resolved, the Plan Administrator shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Plan Administrator in the Plan Administrator's sole discretion.

**SECTION 8.          PROCEDURES FOR DISPUTED CLAIMS**

8.1     Allowance of Claims.

After the Effective Date, the Plan Administrator shall have and shall retain all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan.

8.2     Objections to Claims.

As of the Effective Date, objections to and requests for estimation of Claims against the Debtor may be interposed and prosecuted only by the Plan Administrator. Such objections and requests for estimation shall be served and filed (a) on or before the 60th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Plan Administrator.

8.3     Estimation of Claims.

The Plan Administrator, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim(s) pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim

or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim. The aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4     No Distributions Pending Allowance.

No payment or distribution provided under the Plan shall be made on account of a Claim unless and until such Claim is an Allowed Claim.

8.5     Resolution of Claims.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its estate may hold against any Person. The Plan Administrator may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtor.

8.6     Disallowed Claims.

All Claims held by persons or entities against whom or which of the Debtor or Plan Administrator, as applicable, has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtor from such party have been paid.

8.7     Application of Bankruptcy Rule 7068.

The Debtor, before the Effective Date, and the Liquidated Debtor and the Plan Administrator, after the Effective Date, are authorized to serve upon a Holder of a Disputed Claim an offer to allow judgment to be taken on account of such Disputed Claim, and. Pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extend the Holder of a Disputed Claim must pay the costs incurred by the Debtor or the Liquidated Debtor after the making of such offer, the Debtor and the Liquidated Debtor are entitled to set off such amounts against the amount of any Distribution to be paid to such Holder without any further notice, action, order, or approval of the Bankruptcy Court.

## SECTION 9.          EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     *Rejection of Executory Contracts and Unexpired Leases*.

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejections of such executory contracts or unexpired leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all rejections of such executory contracts and unexpired leases in the Plan are effective as of the Effective Date. A rejection of an Executory Contract or Unexpired Lease shall have no impact on the Debtor's and the Estate's claims, rights, damages and remedies against the counterparty (or any other party) to such Executory Contract or Unexpired Lease. Any such claims, rights, damages and remedies, whether at contract or at law or equity, are expressly preserved for the benefit of the Debtor and its Estate.

9.2 *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtor no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtor, no later than fourteen (14) days after service of the Debtor's proposed rejection of such Executory Contract or Unexpired Lease.

**Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Case on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Debtor's Estate, or the property for any of the foregoing without the need for any objection by the Debtor or Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**

All Allowed Claims arising from the rejection of the Debtor's prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

# SECTION 10.        CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

10.1    *Conditions Precedent to the Effective Date*.

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)     the Bankruptcy Court shall have entered the Confirmation Order acceptable to the Debtor, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

(b)     all actions, documents and agreements necessary to implement and consummate the Plan shall have been effected or executed;

(c)     all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

(d)     all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

10.2    *Waiver of Conditions Precedent*.

Each of the conditions precedent to the Effective Date in Section 10.1 other than the condition set forth in Section 10.1(a) may be waived in writing by the Debtor.

10.3    *Effect of Failure of Conditions to Effective Date*.

If the Confirmation Order is vacated due to a failure of a condition to the Effective Date to occur, (i) no distributions under the Plan shall be made and (ii) the Debtor and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date ever occurred.

# SECTION 11.        EFFECT OF CONFIRMATION

11.1    Vesting of Assets.

Except as otherwise provided in the Plan, On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate shall re-vest in the Debtor free and clear of all Claims, liens, encumbrances, charges and other interests, except as otherwise provided pursuant to this Plan and the Confirmation Order.

11.2    Release of Liens.

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor's estate shall be fully released, settled, and compromised.

11.3    Subordination of Claims or Interests.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, under section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor or Plan Administrator, as applicable, reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

11.4    Binding Effect.

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

11.5    Term of Injunctions or Stays.

All injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, shall remain in full force and effect until the Confirmation Date.

11.6    Plan Injunction.

Except as otherwise provided under a Final Order entered by the Bankruptcy Court or with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall enjoin, with respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order, (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan.

11.7    Limitation of Liability.

To the maximum extent permitted under section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the

Disclosure Statement, the Plan Supplement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan.

       11.8    Solicitation of the Plan.

       As of and subject to the occurrence of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

**SECTION 12.**      **RETENTION OF JURISDICTION**

       On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

       (a)    to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

       (b)    to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

       (c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

       (d)    to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

       (e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

       (f)    to adjudicate any and all matters with regard to the Plan Administrator;

       (g)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

       (h)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)      to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)      to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtor's tax liability under section 505(b) of the Bankruptcy Code);

(n)      to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)      to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)      to enter a final decree closing the Chapter 11 Cases;

(r)      to enforce all orders previously entered by the Bankruptcy Court;

(s)      to recover all assets of the Debtor and property of the Debtor's Estate, wherever located; and

(t)      to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 13.          MISCELLANEOUS PROVISIONS

### 13.1   *Payment of Statutory Fees*.

On the Effective Date and thereafter as may be required, the Liquidated Debtor (Plan Administrator) shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtor's case; provided, however, that after the Effective Date such fees shall only be payable

with respect to the Debtor's Case until such time as a final decree is entered closing the Debtor's Case, a Final Order converting such case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Debtor's Case is entered.

### 13.2   *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.3   *Amendments*.

(a)    *Plan Modifications*. Plan may be amended, modified or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided that such amendments, modifications, or supplements shall be satisfactory in all respects to the Debtor. In addition, after the Confirmation Date, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    *Other Amendments*. Before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.

### 13.4   *Revocation or Withdrawal of the Plan*.

The Debtor reserves the right to revoke or withdraw the Plan, prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor, the Debtor's Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor, the Debtor's Estates, or any other Entity.

### 13.5   *Severability of Plan Provisions upon Confirmation*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and

provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (3) nonseverable and mutually dependent.

13.6    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

13.7    *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.8    *Additional Documents*.

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.9    *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Purchaser, the holders of Claims and Interests, the Exculpated Parties, and each of their respective successors and assigns.

13.10   *Successor and Assigns*.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

13.11   *Entire Agreement*.

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

13.12   *Notices*.

All notices, requests and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows-

      (i)      if to the Debtor or Liquidated Debtor:

            Linden Center LLC
            c/o CFGI
            Attn: Mr. Howard Konicov
            340 Madison Avenue, 3rd FL
            New York, New York 10173

            - with a copy to-

            A.Y. STRAUSS LLC
            Attn: Eric H. Horn, Esq.
            101 Eisenhower Parkway, STE 412
            Roseland, New Jersey 07068

After the Effective Date, the Liquidated Debtor shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidated Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:  April 26, 2024

            **A.Y. STRAUSS LLC**


            By:___*/s/ Eric H. Horn*_____
            Eric H. Horn, Esq.
            Heike M. Vogel, Esq.
            Eva M. Thomas, Esq. (*admitted pro hac vice*)
            535 Fifth Avenue, 4th Floor
            New York, New York 10017
            Tel. (973) 287-5006
            Fax  (973) 226-4104

            *Counsel to the Debtor and*
            *Debtor-in-Possession*